Francis X. McLAUGHLIN, Plaintiff,

v.

Benjamin C. BRADLEE, et al., Defendants.

Civ. A. No. 84–1776.

United States District Court, District of Columbia.

Feb. 26, 1985.

Francis X. McLaughlin, Kensington, pro se.

William E. McDaniels, David E. Kendall, Kevin T. Baine, and Gerson A. Zweifbach, Williams & Connolly, Washington, D.C., for defendants The Washington Post Co., Bradlee, and Chesire.

Hugh E. Donovan, Donovan & Nash, Silver Spring, Md., for defendants Alban and Michaleski.

David A. Levin, Digges, Wharton & Levin, Annapolis, Md., for defendant Montgomery County.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Before the Court are plaintiff's three most recent postjudgment motions in this case: (1) his January 29, 1985 "Rule 15(a) Motion to Clarify Complaint by Amendment", (2) his February 7, 1985 Rule 59(e) Motion (Renewed)", and (3) his February 12, 1985 "Rule 54(b) Motion for Entry of Final Judgment Etc." Upon consideration of the motions, the opposition thereto, defendants' requests for sanctions, and the supporting memoranda, the Court for the reasons herein stated, denies plaintiff's motions, and grants defendants' requests for sanctions.

## BACKGROUND

The following background information is extremely confusing due to plaintiff's wide-reaching and excessive legal maneuvering. The interrelated nature of McLaughlin's postjudgment motions adds to this confusion.

On June 11, 1984, plaintiff, a lawyer, filed the complaint in this case. The complaint attacked an alleged conspiracy between certain employees of the Washington Post and the Montgomery County, Maryland, police force, who allegedly conspired to discredit and injure the plaintiff. On December 21, 1984, this Court issued a lengthy Opinion and Order dismissing the four count complaint on the grounds that it was precluded by previous litigation.

*McLaughlin v. Bradlee,* 599 F.Supp. 839 (D.D.C.1984). In that Opinion the Court reviewed the extensive previous litigation, which was entirely initiated by plaintiff. Because of the complexity of plaintiff's previous suits, the Court will not repeat the history of the litigation here. It is sufficient to note that by the time plaintiff's grievances appeared before this Judge, plaintiff had already burdened three separate courts, (exclusive of appellate courts), with substantially the same suit arising out of the same alleged conspiracy. Plaintiff lost in each court.

After this complaint was filed, all of the defendants moved to dismiss, and for sanctions against plaintiff. The defendants asserted that plaintiff brought this suit in bad faith, knowing that the issues had been fully litigated. Although the Court gave serious consideration to the requests for sanctions, the Court concluded that there was insufficient evidence of plaintiff's bad faith in filing the lawsuit. The Court considered this to be a close question, however, and included the following passage in the conclusion to the Opinion:

> Today the Court has issued an Order dismissing, with prejudice, each Count presented in this case. Hopefully, this will mark the end of this litigation. If it does not signal the end of plaintiff's litigation on these issues, the Court might later consider the defendants' requests for sanctions.

599 F.Supp. at 850.

On December 31, 1984, the plaintiff, apparently undaunted by the Court's warning, filed a motion, pursuant to Fed.R. Civ.P. 59(e), to vacate the Opinion and Order. On January 28, 1985, after reviewing the motion, defendants' opposition, and plaintiff's response, the Court issued a three page Order denying the motion.

Although this case was long ago dismissed, plaintiff has now filed a motion to amend the complaint. In this motion, filed on January 29, 1985, the day after the Court denied plaintiff's first motion to va-

cate, plaintiff attempts to add a new count to the complaint.

Plaintiff has also now filed a "renewed" motion to reconsider and vacate the Court's Orders of December 21, 1984, and January 28, 1985. In this renewed motion, which was filed on February 7, 1985, as in his previous motion to vacate, (and in his opposition to defendants' motions to dismiss), plaintiff seeks an opportunity to conduct discovery and to hold an evidentiary hearing to demonstrate that he was denied a "full and fair opportunity to litigate" the earlier actions, thus rendering improper the application of the doctrine of *res judicata*. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971).

Plaintiff's final motion (to date) is a "Rule 54(b) Motion for Entry of Final Judgment Etc." In this motion, which was filed on February 12, 1985, plaintiff asks the Court to direct the entry of a final judgment as to its Orders of December 21, 1984 and January 28, 1985. Plaintiff seeks a final judgment only as to the four counts of the original complaint, (which the Court has already adjudicated twice), but not one for his Count V, which he has recently presented to the Court in his motion to amend the complaint. Like his renewed motion to vacate the Court's dismissal and his motion to amend the complaint, the Court will today rule on this motion for entry of final judgment.

In the face of no fewer than four post-judgment motions by plaintiff, the defendants, to no surprise to the Court, have renewed their requests for sanctions against plaintiff. Fed.R.Civ.P. 11; 28 U.S.C. § 1927. After briefly reviewing plaintiff's latest motions, the Court considers these requests for sanctions.

### BECAUSE PLAINTIFF MOVED TO AMEND HIS COMPLAINT AFTER THE COURT HAD DISMISSED THIS CASE, THE COURT DENIES THE MOTION

On June 11, 1984 plaintiff filed a four count complaint in this case. Each of the six defendants timely moved to dismiss the complaint. On December 21, 1984, after lengthy deliberation, the Court decided that the complaint must be dismissed because of the preclusive effects of plaintiff's three previous suits. Seven and a half months after filing his complaint, and several months after the defendants moved to dismiss, and indeed more than one month after the Court dismissed this case, plaintiff moved to amend his complaint. In this motion, McLaughlin desires to add a new Count, Count V, which is premised on a denial of plaintiff's "Constitutional Right to Privacy." This Count contains allegations virtually identical to those in Count I of his original complaint.

Although plaintiff filed this motion one day after the Court had denied his first Motion to Vacate the dismissal, he was apparently unaware of that denial. Plaintiff states that the pendency of his Rule 59(e) motion "stays this court's order granting defendants' Rule 12(b) motions to dismiss the complaint herein", thus allowing plaintiff to exercise his "absolute right to file his amended complaint of January 29, 1985 herein as a 'matter of course' in accordance with the provisions of Rule 15(a) of the F.R.Civ.P." Alternatively, plaintiff requests leave of court to allow him to amend his complaint.

McLaughlin cites only *Reiss v. Richardson*, 455 F.2d 1287, 1289 n.2 (D.C.Cir. 1971), for the proposition that because the Court has not yet ruled on his second Motion to Vacate, plaintiff may amend his complaint "as a matter of course". That case states that a party may amend his complaint "as of right ... until dismissal." *Id.* This case, however, was dismissed on December 21, 1984, one and a half months before plaintiff filed his motion to amend. By the time plaintiff filed this motion, the Court had even denied one Motion to Vacate. Thus, there can be no doubt that the motion to amend came too late to be filed "as a matter of course". *Id.* *See also Jackson v. Salon*, 614 F.2d 15, 17 (1st Cir.1980); *Rodgers v. Lincoln Towing Service, Inc.*, 596 F.Supp. 13, 26 (N.D.Ill.1984) (denying motion to amend while considering a Rule 59(e) motion).

■ The Court also denies plaintiff's request for leave of court to amend his complaint. In plaintiff's motion he presents no reasons why the additional Count V would not suffer from the same fatal defects as the other four counts. Indeed, its substantial identity with original Count I [1] convinces the Court that it would be an abuse of discretion to permit the amendment. *Rodgers*, 596 F.Supp. at 26.

## BECAUSE THE COURT HAS ALREADY DECIDED THE ISSUES PRESENTED BY PLAINTIFF'S SECOND RULE 59(e) MOTION, THE COURT DENIES THE MOTION

On February 7, 1985, plaintiff filed his *second* Rule 59(e) Motion, seeking reconsideration of two of the Court's Orders, namely, (1) the Court's Order of December 21, 1984, which dismissed his complaint, with prejudice, on the basis of *res judicata*, and (2) the Court's Order of January 28, 1985, which denied plaintiff's *first* Motion to vacate the aforesaid Order of December 21, 1984. The Court's reaction to plaintiff's filing of this motion is one of disbelief.

Plaintiff presents absolutely no new argument in this motion to vacate. As previously noted, plaintiff repeats his request for discovery and an evidentiary hearing to prove that he "was deprived of crucial evidence or witnesses in the first litigation",

citing *Blonder-Tongue*, 402 U.S. at 333–34, 91 S.Ct. at 1445–46. The Court already has, on two separate occasions, rejected this contention. *See McLaughlin v. Bradlee*, 599 F.Supp. at 846–847, 849, 850; Order of January 28, 1985, at 1–3.

In this renewed motion, plaintiff points out that:

> both Judges Miller [of the U.S. District Court in Maryland] and Gesell [of this Court] had denied his requests to examine defendant Alban concerning the some 320 pages of his [police] reports which had been requested, but withheld, during the state court case and in CA No. 81–779 [before Judge Gesell] in this court. (Plaintiff asked Judge Gesell both before and after he, plaintiff, had obtained the 320 pages on January 31, 1984, but his request to examine Alban was summarily denied in both instances.)

■ Rather than support plaintiff's contention that *res judicata* should not apply, these facts indicate that plaintiff's asserted entitlement to discovery is itself barred by *res judicata*.[2] Plaintiff, having requested and been denied this same discovery in two separate courts, cannot now assert an entitlement to that discovery.[3] For these reasons, and for the reasons stated in the Court's Opinion of December 21, 1984, and in the Court's Order of January 28, 1985, the Court denies this second motion to vacate.

---

1. Count I in relevant part alleged that:
   > defendants agreed to, and did, violate plaintiff's constitutional right to privacy against the disclosure of personal information which had been acquired under the color of state law and which was maliciously disclosed by defendant Alban ... to defendant Chesire in her own right and on behalf of defendants Bradlee and the "Post".

   Similarly, in Count V, plaintiff seeks to add the following allegations to the Complaint:
   > Defendant Alban, beginning in, or about, October 1978, ... on behalf of himself as well as on behalf of defendants Michaleski and Montgomery County, Md., violated plaintiff's constitutional right to privacy against the disclosure of personal (and professional) information which said defendants had acquired under color of state law and which the unlawfully and maliciously disclosed ... to unauthorized persons not defendants herein.

   Plaintiff has made no attempt to distinguish Count V from Count I, (other than the minor

facial differences), nor any attempt to explain why Count V, unlike Count I, should not be subject to preclusion.

2. This might also be considered within the purview of the doctrine of the law of the case. *See* 1B *Moore's Federal Practice* ¶ 0.404 at 117 *et seq.*

3. It appears that the true purpose behind this motion is not to rehash plaintiff's request for discovery and a hearing, but rather to provide plaintiff with a basis for arguing that this lawsuit is still "pending", and that therefore his complaint can be amended "as a matter of course." *See infra*, p. 1419. As in his motion to amend, plaintiff again cites *Reiss v. Richardson*, 455 F.2d 1287, 1289 n.2 (D.C.Cir. 1971), to demonstrate that because the Court has not yet ruled on this second motion to vacate, plaintiff may amend his complaint. The Court has already concluded that it must deny the motion to amend. *See supra*, pp. 1414–1415.

## BECAUSE THE COURT HAS ENTERED A FINAL JUDGMENT AS TO ALL PROPERLY PRESENTED CLAIMS, THE COURT MUST DENY THE RULE 54(b) MOTION

██ Plaintiff's most recent filing is a "Rule 54(b) Motion for Entry of Final Judgment Etc." This Rule allows a Court which has adjudicated some, but not all, of the claims presented, to direct the entry of a final judgment as to those claims if there is no just reason for delay. Fed.R.Civ.P. 54(b). Thus, a party may appeal those judgments while other counts of the complaint remain to be adjudicated in the District Court.

It is McLaughlin's position that because the Court has not yet ruled on Count V of his amended complaint, which he allegedly filed "as a matter of course" while awaiting the Court's ruling on his second Motion to Vacate, this action is somehow still "alive" in this Court, at least as to Count V. Thus, plaintiff would like the Court to direct the entry of final judgment as to Counts I–IV, so that plaintiff may appeal the dismissal of these Counts.[4] The Court, however, has decided that it must deny the Motion to Amend the Complaint. *See supra*, pp. 1414–1415. Therefore, Count V is not before the Court, and plaintiff is not faced with any piecemeal judgments. Rule 54(b) is improper in such a case, and the Court denies plaintiff's motion.[5]

## BECAUSE PLAINTIFF HAS HARASSED THE COURT AND DEFENDANTS WITH PLEADINGS FILED FOR IMPROPER PURPOSES, AND HAS THEREBY UNREASONABLY INCREASED COSTS, THE COURT MUST IMPOSE SANCTIONS PURSUANT TO RULE 11 AND 28 U.S.C. § 1927

*A. Bases for the Court's Authority to Impose Sanctions.*

██ Rule 11 of the Federal Rules of Civil Procedure, in part, provides as follows:

The signature of an attorney or party [on a pleading, motion, or paper] constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, *and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....* If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (Emphasis supplied).

Under this rule, as amended in 1983, the court has a responsibility to impose punishment for violations. Fed.R.Civ.P. advisory committee note. "And the words 'shall impose' in the last sentence focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, ... has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.... The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, Federal Practice ¶ 7.05 at 1544, by emphasizing the responsibility of the attorney and reenforcing those obligations by the imposition of sanctions." *Id.*

The United States Code has a provision similarly designed to deter such abuses. 28 U.S.C. § 1927; *Tedeschi v. Smith, Bar-*

---

4. In a letter to the Court, plaintiff admits that he "doubt[s] that the 'renewed' Rule 59(e) motion of February 7, 1985 further tolls the time for the taking of an appeal."

5. McLaughlin should not be too distressed with this result because, with the Court's Order accompanying this Opinion, he will definitely have a final and appealable judgment.

*ney, Harris Upham & Co.*, 579 F.Supp. 657, 660–61 (S.D.N.Y.1984). That section provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

28 U.S.C. § 1927.

These codifications are supplemented by a court's inherent power to impose sanctions on recalcitrant attorneys or litigants. *Tedeschi*, 579 F.Supp. at 660–61; *Synanon Church v. United States*, 579 F.Supp. 967, 974 (D.D.C.1984). It has long been the rule that "federal courts, in the exercise of their equitable powers, may award attorneys fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–1946, 36 L.Ed.2d 702 (1973). "Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 5, 93 S.Ct. at 1946 (quoting 6 J. Moore, *Federal Practice* ¶ 54.77[2] at 1709 (2d ed. 1972)). An award of fees for such vexatious conduct is punitive, and must be predicated upon a showing of bad faith.[6] *Hall*, 412 U.S. at 5, 93 S.Ct. at 1946; *Tedeschi*, 579 F.Supp. at 661.

B. *There is Abundant Evidence That Plaintiff's Conduct Has Been Vexatious, and Clearly Warrants the Imposition of Sanctions.*

■ Defendants first moved for sanctions against McLaughlin because McLaughlin was attempting to relitigate matters already adjudicated. It is especially appropriate to impose sanctions in situations where the doctrines of *res judicata* and collateral estoppel plainly preclude re-

litigation of the suit. *E.g. Huettig & Schromm v. Landscape Contractors Council*, 582 F.Supp. 1519, 1521 (N.D.Cal. 1984); *Andre v. Merrill Lynch Ready Assets Trust*, 97 F.R.D. 699, 702 (S.D.N.Y. 1983). *See also Weiss v. United States*, 227 F.2d 72, 73 (2d Cir.1955), *cert. denied* 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817 (1956). The imposition of sanctions is one of the few options available to a court to deter and punish people who relitigate cases hopelessly foreclosed.

■ Although the Court first determined that plaintiff's actions were plainly foreclosed by plaintiff's extensive previous litigation, 599 F.Supp. at 848 ("the Court can find no mitigating circumstances in favor of plaintiff"), at 850 ("it would be exceedingly unfair to require defendants to again face these charges"), the Court was reluctant to impose any sanctions at the time it first dismissed this case because it sincerely believed that plaintiff, trained in the law, would cease and desist litigating the issues he had asserted thrice previously and lost. The Court, however, clearly alerted McLaughlin that if he continued his vexatious and harassing abuse of the judicial process, it might find sufficient evidence of his bad faith to impose sanctions against him. 599 F.Supp. at 841, the Court made it plain that it had "decided to deny the requested sanctions at this time, but to retain jurisdiction of the question of sanctions until it is determined what further actions, if any, the plaintiff may take. If further proceedings are undertaken on the issues herein decided, the defendants may make application for a hearing to re-open this request at the earliest possible date consistent with the Court's docket and other responsibilities." The Court concluded its Opinion with the following warning: "Hopefully this will mark the end of this litigation. If it does not signal the end of

---

**6.** Under the 1983 amendments to Fed.R.Civ.P. 11, there may be doubt as to whether a finding of bad faith is a necessary predicate for the imposition of sanctions. *E.g. Rodgers v. Lincoln Towing Service, Inc.*, 596 F.Supp. 13, 22 and 27 (N.D.Ill.1984). In light of McLaughlin's obvious

harassment in instituting this lawsuit and in filing numerous frivolous motions, the Court concludes that the requirements of Rule 11 are met here, and that plaintiff has unquestionably acted in bad faith.

plaintiff's litigation on these issues, the Court might later consider the defendants' requests for sanctions." *Id.* at 850.

McLaughlin's four frivolous postjudgment motions have eliminated the Court's doubts about his intent to harass defendants. Together with plaintiff's history of litigation abuses, described herein, these postjudgment motions represent a plain example of plaintiff's bad faith, particularly in light of the three cases prior to the instant one. Plaintiff's conduct, in the face of abundant warnings from all defendants herein, and from the Court, have convinced the Court that he brought this entire lawsuit, with its attendant frivolous motions, in bad faith.

In imposing sanctions under Rule 11, the Court must take into account all of the surrounding circumstances. *Huettig & Schromm*, 582 F.Supp. at 1522; Fed.R. Civ.P. 11 advisory committee note. In the present case, not only did McLaughlin, a lawyer, file the instant suit, which was plainly barred by previous litigation, but in 1981 he simultaneously filed a photocopied complaint in three separate courts. Each of those courts was burdened with some of his predictable postjudgment motions, followed by appeals. Plaintiff can now add the name of this Judge to the list of those who have faced his campaign of judicial harassment. McLaughlin apparently believes that he may continue to file meritless motions until the Court gives in to his demands. Simply stated, he is wrong in that belief.

It is significant to note that McLaughlin is not a first offender. His "penchant for placing a conspiratorial gloss on the most innocuous of happenstances" has already been recognized by a federal judge. *In the Matter of Winthrop Lawrence Corp.*, Civ. No. Y–80–2470 (D.Md.) (Young, J.) (slip op., July 29, 1981), at 8, n.8. *See also McLaughlin v. Copeland*, 455 F.Supp. 749 (D.Del.1978), *aff'd without opinion*, 595 F.2d 1213 (3d Cir.1979) (dismissing plaintiff's complaint, which alleged a conspiracy to commit various torts, for failure to state a claim).

A review of *Winthrop* demonstrates that McLaughlin is no stranger to judicial rebuke. That case involved several appeals by McLaughlin from adverse rulings by the bankruptcy court. The District Court affirmed every substantive determination by the bankruptcy judge, but reversed the bankruptcy judge's award of fees (because, in District Judge Young's view, bankruptcy judges, as opposed to Article III judges, do not have "inherent power" to award fees for vexatious conduct). Judge Young did assess costs and fees against McLaughlin for the efforts expended on appeal.

The Court finds relevant many of Judge Young's comments:

> To date, none of appellant's various legal meanderings have borne fruit. Indeed, McLaughlin's most recent go-rounds have been decidedly unsuccessful, the bankruptcy court having in each instance assessed costs and fees against him in an apparent (and probably futile) attempt to forestall even further legal jousting.... McLaughlin desparately needs to be told to seek his talisman elsewhere. (*Winthrop*, slip op. at 1–2).

> In fact, [bankruptcy] Judge Lebowitz admonished McLaughlin that the history of this "litigation" bordered on abuse of process. The court further admonished McLaughlin that "if any other pleadings were filed without substantial merit, the court would entertain a Motion to hold [McLaughlin] responsible for costs, attorneys' fees, and other expenses." July 24 Order at 13.

> Undeterred, McLaughlin on July 10, 1980 himself filed an Application for Examination [of an individual]. Attached to this Application was a 176 page "Factual Submission", and a self-serving affidavit.... Judge Lebowitz reviewed the submission, found it to be a rehash of the unsupported allegations made by McLaughlin over the course of the previous years, and denied the application without a hearing. Costs and fees were assessed. McLaughlin predictably appeals from this determination.... (*Id.*, at 6).

[T]his court has no hesitation in paraphrasing Judge Lebowitz's comment in his July 24 Order at 15:

The Court ... is firmly convinced that ... the filing[s] by McLaughlin [have] no merit and [were] filed in bad faith, vexatiously and for oppressive reasons. (*Id.,* at 16).

It is clear, therefore, that McLaughlin has in the past filed meritless and vexatious motions for purposes of harassment. He is also familiar with the consequences of such actions. In assessing all of the circumstances, *Huettig & Schromm,* 582 F.Supp. at 1522, the Court considers this evidence probative of McLaughlin's bad faith.

One does not have to look far for further evidence of plaintiff's vexatious intent. After this Court denied his first Rule 59(e) Motion, plaintiff filed a renewed Rule 59(e) Motion. In the interim, McLaughlin had filed a Motion to Amend the Complaint. The Court is convinced that McLaughlin's second Motion to Vacate was filed solely as a futile attempt to keep this action "alive" so that he might amend his complaint "as a matter of course". Plaintiff cited no authority for these procedural gymnastics, which were clearly interposed to "multipl[y] the proceedings" and "to increase costs unreasonably and vexatiously." 28 U.S.C. § 1927.

That plaintiff filed his second Rule 59(e) motion only so that he could amend his complaint, and not to actually "alter or amend the judgment", is evidenced by his Rule 54(b) Motion. In that Motion, filed only four days after the renewed Rule 59(e) Motion, McLaughlin asked the Court to *enter final judgment* as to its December 21 and January 28 Orders. However, those were the very Orders which plaintiff sought to *vacate* only four days previously. Because McLaughlin did not give the Court adequate time to consider the merits of his second Rule 59(e) Motion, it is clear that this second Rule 59(e) Motion was not filed for proper purposes, such as to "alter or amend the judgment", Fed.R.Civ.P. 59(e), but rather for improper purposes, i.e. to allow plaintiff to amend his complaint. Obviously that is not a purpose for which Rule 59(e) was established. *Compare* Fed. R.Civ.P. 59(e) *with* Fed.R.Civ.P. 15(a).

When plaintiff first filed this lawsuit, he knew full well that he would face a motion for sanctions. In a letter dated June 9, 1984, (two days before McLaughlin instituted this lawsuit), Mr. McDaniels, lawyer for three of the named defendants, told him:

This letter is also to put you on notice that our clients view the draft complaint as frivolous, vexatious, harassing and would consider its filing a malicious prosecution of a civil claim.... This is to serve notice that Ms. Chesire, Mr. Bradlee and The Washington Post will hold you responsible for all expenses incurred in defending themselves against this frivolous, vexatious and malicious complaint if it is filed.

Thus, McLaughlin was expressly told, if he needed to be told, that this was a frivolous complaint, and that he might be liable for expenses and fees incurred by the defendants. Plaintiff further knew, at the time that he filed the suit, that he had already cost these defendants considerable sums of money in his zealous but unsuccessful attacks on this alleged conspiracy. As he stated in his Opposition to Motion to Dismiss, at 19, "Following the filing of the '1981' litigation the 'Post' has expended some $1.3 million in a further effort to crush the plaintiff...." From the filings by the various defendants in the present case, the Court is certain that they spent a substantial amount of money in defending *this* frivolous complaint as well. Plaintiff should not be surprised to learn that he must pay for that successful defense.

## CONCLUSION

This Court has limited resources. In 1984 the Court deliberated at length over plaintiff's frivolous complaint. The Court has reluctantly spent considerable time and effort on this Opinion, detailing McLaughlin's derelictions and abuses. When one plaintiff consumes so much of the Court's time on groundless actions, not only do the

defendants and the Court suffer, but so do the other litigants with legitimate legal issues. The Court will no longer tolerate such abuses of the legal system.

For reasons amply stated herein, the Court is absolutely convinced that plaintiff instituted this lawsuit in bad faith, and, faced with dismissal of the case, proceeded to inundate the Court with one frivolous motion after another. It is clear that plaintiff is bent on harassing these defendants, making them suffer substantial expenses in defending themselves against this scurrilous attack. The Court has determined that McLaughlin must account for costs and expenses, including attorneys' fees, to which he has subjected the defendants. By Order of even date herewith, the Court directs defendants to submit, within ten days, applications for reasonable fees and costs representing time spent on this case after June 11, 1984, the date that plaintiff filed the instant complaint. *See Aune v. United States*, 582 F.Supp. 1132, 1136 (D.Ariz.1984); *Rodgers v. Lincoln Towing Service, Inc.*, 596 F.Supp. 13, 22 (N.D.Ill. 1984) (defendants in both cases were ordered to submit applications for fees). The Court will not become embroiled in "satellite litigation" over these fees, Fed.R.Civ.P. 11 advisory committee note, but the Court will allow plaintiff to respond to the application, within the time allowed by the Rules of the Court. Except for the defendants' applications for fees and costs, and the plaintiff's reply thereto, the Clerk is ordered not to receive any further pleadings with respect to this case.