Laverne Johnson REYNOLDS, et al., Plaintiffs,

v.

THE U.S. CAPITOL POLICE BOARD, Defendant.

No. 01–810 (RJL).

United States District Court, District of Columbia.

March 31, 2004.

Lolita James Martin, Martin and James L.L.P., Washington, DC, for Plaintiffs.

William F. Allen, Office of House Employment Counsel, Frederick Michael

Herrera, United States Capitol Police, Toby R. Hyman, U.S. Senate, Stratton C. Strand, U.S. Attorney's Office, Washington, DC, Erica A. Watkins, Office of Senate Chief Counsel for Employment, Alexandria, VA, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendant U.S. Capitol Police Board's Motion for Sanctions. The defendant moves for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 on the grounds that the plaintiff Kennieth Thompson ("Thompson") and his counsel, Lolita and LaJuan Martin ("the Martins"), have made repeated and vexatious efforts to pursue allegations that the Court has ruled are barred by the statute of limitations, causing the Court and the defendant to unnecessarily expend resources on claims that counsel knew, or should have known, are non-justiciable. For the following reasons, the Court agrees and awards sanctions against both plaintiff Thompson and his two attorneys.

### *Factual Background*

The current action involves claims by plaintiff Thompson and plaintiff LaVerne Johnson Reynolds ("Johnson Reynolds"), current and former employees of the U.S. Capitol Police force, under the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301–1438, for discrimination on the basis of race, gender, and disability, as well as for retaliation / hostile work environment. Although the Court has recently summarized the facts of this case in its memorandum opinion dismissing both plaintiffs' claims, a brief summary of the

facts as they relate to plaintiff Thompson's two previous lawsuits against the defendant is warranted.

In November 6, 1997, plaintiff Thompson, represented by the Martins, brought CAA claims for race and gender discrimination against the defendant. In support of these claims they presented a detailed version of the events leading up to his termination from the police force. *See Thompson v. Capitol Police Board,* 120 F.Supp.2d 78 (D.D.C.2000) (*"Thompson I "*), Second and Third Amend. Compls., Def. Mot. for Sanctions, Ex. A, C. On October 26, 2000, Judge Urbina granted the defendant's motion for summary judgment and held that plaintiff Thompson filed his administrative complaint late because he filed his claim with the Office of Compliance on April 1, 1997, 188 days after he was notified of his termination on September 25, 1996. *Thompson I,* 120 F.Supp.2d 78, 82 (D.D.C.2000).[1] Moreover, Judge Urbina in *Thompson I* explicitly rejected the plaintiff's arguments that a continuing violation theory could sustain his action because the plaintiff had not alleged any discriminatory acts within the limitations period. *Id.* at 83. Judge Urbina also rejected Thompson's argument for equitable tolling because he failed to demonstrate any "extraordinary circumstances." *Id.* at 83–84. As the plaintiff failed to timely exhaust administrative remedies under the CAA, Judge Urbina concluded that the court lacked subject matter jurisdiction over his claims. *Id.* at 84.

The Martins subsequently filed a motion for reconsideration of this ruling on behalf of plaintiff Thompson. On April 25, 2001, Judge Urbina denied the plaintiff's motion, stating: "[T]he plaintiff fails to raise any factual errors, legal errors, or intervening

---

**1.** The statutory framework of the CAA requires a plaintiff to request counseling not later than 180 days after the alleged discriminatory conduct to preserve his claims. 2 U.S.C. § 1402(a).

changes in the law that would justify granting his motion for reconsideration." *Thompson v. Capitol Police Board,* 2001 WL 797876, at * 1 (D.D.C., April 25, 2001). Furthermore, Judge Urbina found that "the suggestion by counsel [for Thompson] that the court should overlook the obvious legal deficiencies merely because [he] invested considerable resources and time in the hopes of having a jury hear this case is nothing short of preposterous." *Id.* at *4. Plaintiff Thompson appealed and the D.C. Circuit on December 17, 2001 affirmed Judge Urbina's ruling, finding that the action was time-barred and the plaintiff failed to show the existence of a continuing violation or facts meriting equitable tolling. *Thompson v. U.S. Capitol Police Board,* 2001 WL 1699417, at *1 (D.C.Cir., Dec.17, 2001) (per curiam).

Amazingly, however, the Martins filed a second suit on behalf of plaintiff Thompson against the same defendant on July 12, 2001, nearly five months *prior* to the D.C. Circuit's ruling on the appeal in *Thompson I. Kennieth F. Thompson v. The Capitol Police Board,* Civ. No. 01–1528 (D.D.C.) ("*Thompson II*"). The facts plead in *Thompson II* were virtually identical to the facts plead in *Thompson I. Thompson II,* Complaint, Def. Mot. for Sanctions, Ex. G. The statutory basis alleged for this second suit, as in *Thompson I,* was the Congressional Accountability Act ("CAA"). However, other than the claim that "the plaintiff has complied with all administrative processes pursuant to Title II of the CAA," *id.* at ¶ 2, there were no other factual allegations put forth addressing the jurisdictional deficiency identified in *Thompson I, i.e.,* the plaintiff's failure to exhaust administrative remedies under the statutory framework. U.S. District Judge Emmet Sullivan was assigned to this second suit and subsequently had to dismiss the claims for failure to prosecute. *Thompson II,* Order (February 28, 2002) (after plaintiff failed to respond to show cause order, dismissing case for failure to prosecute), Def. Mot. for Sanctions, Ex. H.

Undeterred, the Martins in July 2002 sought to amend a complaint which they had filed in April 2001 on behalf of another one of their clients (*i.e.,* LaVerne Johnson Reynolds) in an *unrelated* matter against the same defendant. By that time, another judge of this Court initially assigned to the Johnson Reynolds case, *i.e.,* U.S. District Judge James Robertson, had already denied in part and granted in part a defense motion dismissing one count of the Johnson Reynolds' complaint. A review of the Amended Complaint yields no commonality as to the plaintiffs' factual allegations, except that they were both employed by the defendant and claim to have been the targets of ongoing discrimination. Indeed, Thompson's allegations in the Amended Complaint are substantially the same as those the Martins put forth in the first two cases they filed against the defendant,[2] including the same basis for liability, and the previously rejected basis for jurisdiction, a violation of the CAA.[3] Moreover,

---

2. Other than the facts alleged in *Thompson I* and *Thompson II,* plaintiff Thompson alleged two events that occurred more than three years after his termination in this case, relating to alleged false documentation in his personnel file. Amend. Compl. ¶¶ 18–20. The Court found that these claims neither revived his untimely claims nor created any new cause of action. Mem. Op. at 19–24 (March 31, 2004). As in the two previous cases, the plaintiff failed to put forth any factual basis

indicating that he exhausted administrative remedies under the CAA for this newly plead conduct.

3. This Court, newly reassigned the Johnson Reynolds case, granted the requested leave to amend after the Martins represented in the initial status conference before this Court that the claims they wished to add were not frivolous. Def. Mot. for Sanctions, Ex. I, Hrg. Tr. at 16–17 (July 22, 2002). The defendant filed

the Amended Complaint as it relates to plaintiff Thompson repeats the same allegation included in complaints in *Thompson I* and *Thompson II*: "[P]laintiffs have complied with all administrative processes pursuant to Title II of the CAA...," Amend. Compl. ¶ 2, and does not include any further factual allegations as to the defendant's requests for counseling and mediation, as required by statute.

On December 2, 2002, the defendant filed a motion for sanctions against plaintiff Thompson and the Martins claiming that the conduct of both the plaintiff and his counsel violates Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, and represents the "height of abuse of the judicial process." Def. Mot. for Sanctions, at 6. Specifically, the defendant argues that under Rule 11(b)(2) and (3) the claims in this lawsuit are neither warranted by existing law nor can they characterized as an argument for modification of existing law, and have no factual basis or evidentiary support. *Id.* at 7–8, 10–11. Moreover, the defendant also argues that this lawsuit has been brought for an improper purpose, in violation of Rule 11(b)(1). *Id.* at 12. Finally, the defendant asserts 28 U.S.C. § 1927 as an additional basis for sanctions against the plaintiff and his counsel because this third lawsuit is plainly inconsistent with Judge Urbina's earlier dismissal of the same claims in *Thompson I*. Def. Mot. for Sanctions, at 14. The plaintiff has failed to file an opposition to this motion.[4]

*Discussion*

■ Rule 11 of the Federal Rules of Civil Procedure provides that upon presentation to the Court of a pleading, written motion, or other paper, an attorney or unrepresented party is thereby:

[C]ertifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...(1) it is not being presented for any proper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). "The test under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim." *Washington Bancorporation v. Said*, 812 F.Supp. 1256, 1275 (D.D.C.1993). Parties and their counsel

a motion for reconsideration of this Court's order granting the plaintiffs leave to file an amended complaint. Def. Mot. for Reconsideration (Oct. 2, 2002). The record in this case, however, was not sufficiently developed at that stage to expose the truly frivolous nature of the plaintiff's claims, and the Court denied the defendants' motion for reconsideration on November 4, 2002. Upon consideration of the defendant's subsequent motions to dismiss, which were accompanied by a detailed and thorough set of exhibits docu-

menting the egregious conduct of the plaintiff and his counsel, the Court dismissed the plaintiffs' claims in their entirety earlier today.

4. Curiously, the motion for sanctions states that "counsel for Defendant has discussed this motion with counsel for Thompson, who oppose the motion." However, the record in this case reflects no written opposition filed on behalf of the plaintiff.

may be sanctioned by the Court for violations of Rule 11. Fed.R.Civ.P. 11(c); *see also Geller v. Randi,* 40 F.3d 1300, 1304–05 (D.C.Cir.1994) ("Rule 11 expressly authorizes the imposition of sanctions against a 'represented party' for violation of the rule."). However, Rule 11 expressly states that monetary sanctions may not be awarded against a represented party for a violation of subsection (b)(2), regarding frivolous legal claims. Fed.R.Civ.P. 11(c)(2)(A).

▮ The D.C. Circuit has held that "once the district court finds that a pleading is not well grounded on fact, not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or is interposed for any improper purpose, 'Rule 11 *requires* that sanctions of some sort be imposed.'" *Rafferty v. NYNEX Corp.,* 60 F.3d 844, 852 (D.C.Cir.1995) (citing *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174–75 (D.C.Cir.1985)) (emphasis in the original). That a party fails to respond to a motion for sanctions will not limit the applicability of Rule 11. *Geller,* 40 F.3d at 1304 ("[W]e conclude that, under District of Columbia local rules, a party can be sanctioned for a Rule 11 violation if that party fails to respond to a motion for Rule 11 sanctions."). Moreover, where a party reiterates arguments that have already been unequivocally rejected by the Court, and its pleadings reflect a deliberate decision to ignore an opinion of the Court which is the controlling law of the case, sanctions are warranted under Rule 11. *See, e.g., Blackman v. District of Columbia,* 150 F.Supp.2d 133, 136 (D.D.C.2001); *McLaughlin v. Bradlee,* 602 F.Supp. 1412, 1417–18 (D.D.C.1985), *aff'd* 803 F.2d 1197 (D.C.Cir.1986). For the following reasons, the Court finds that the conduct of plaintiff Thompson and his attorneys in filing the Amended Complaint, piggybacking on plaintiff Johnson Reynolds' case but alleging essentially the same claims alleged in *Thompson I* and *Thompson II,* constitutes a clear violation of Rule 11, subsections (b)(1), (2), and (3), and thus warrants sanctions.

First, the plaintiff and his counsel continued to pursue these claims even though Judge Urbina clearly held in *Thompson I* that the conduct prior to and leading up to the notice of the plaintiff's termination was time-barred because the plaintiff had failed to timely exhaust administrative remedies under the CAA. Indifferent to this jurisdictional defect, and prior to the D.C. Circuit's ruling on their appeal of Judge Urbina's ruling, the plaintiff filed an almost identical complaint in *Thompson II,* which unnecessarily tapped into the limited judicial resources of yet another judge of this Court. After that case was dismissed for failure to prosecute that claim, they yet again sought another bite at the judicial apple by amending the complaint in this case in a way calculated to appear different in scope and substance, but lacking any new redeeming legal basis. The Court views this pattern of repeated assertion of flawed claims as a clear violation of Rule 11(b)(3). The plaintiff and his counsel were on notice that the factual allegations plead in *Thompson I* were not sufficient to establish jurisdiction in that case. None of the factual allegations in either *Thompson II* or the Amended Johnson Reynolds Complaint show that the plaintiff, or his counsel, had any reasonable factual basis for resubmitting the same claims a second and third time.

▮ Second, rather than address the clearly dispositive issue in this case—the timeliness of his claims—the plaintiff and his counsel chose instead to present a battery of frivolous legal arguments regarding tolling of statutes of limitations in class action cases. *See* Pl. Opp. to Def. Mot. to Dismiss Thompson, at 6–7. Indeed, the plaintiff even acknowledges Judge Urbi-

na's ruling in *Thompson I* that "[he] failed to exhaust administrative remedies," *id.* at 5, but then persists in arguing that there is no "res judicata" in the case on the grounds that "exhaustion of administrative remedies by one member of the class satisfies the requirement for all others..." *Id.* at 6. Notwithstanding counsel's representations to this Court to the contrary,[5] the plaintiff neither alleged any commonality of factual allegations in the Amended Complaint with plaintiff Johnson Reynolds, nor indicated any intent to file a class action. In addition to his class-related claims, plaintiff Thompson realleged that a continuing violation theory and the doctrine of equitable tolling were applicable to revive his untimely claims, even though these two issues that had already been rejected in *Thompson I*, without providing any factual basis even suggesting why the circumstances might have changed to make their applicability appropriate in this case. It is plainly in violation of Rule 11(b)(2) to allege legal theories that have no apparent basis for application in this case. Plaintiff and his counsel's view of litigation appears to be somewhat akin to a roulette game with an endless series of spins at the wheel. Putting aside the cynicism inherent in such an attitude, judicial resources are far too scarce to accommodate such conduct and Rule 11 was constructed, in part, to ensure that it does not become common place.

▮ Third, the Court finds that the calculating indifference of plaintiff Thompson and his counsel to the prior rulings of members of this Court constitutes an intent to bring claims in bad faith. *See McLaughlin*, 602 F.Supp. at 1418; *see also McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986) ("[W]hen the preclusion doctrine clearly forecloses consideration of the merits, the groundlessness of the litigation or the bad faith in which it was brought may become especially apparent."). As in *McLaughlin*, where a plaintiff had both a history of litigation abuses across several cases and an unwillingness to heed "abundant warnings from all defendants," 602 F.Supp. at 1418, plaintiff Thompson and his counsel appear to have made a deliberate decision to ignore both rulings by different members of this Court and the D.C. Circuit, and the law in filing the current suit. Ignoring the earlier ruling of Judge Robertson dismissing plaintiff Johnson Reynold's retaliation / hostile work environment claim for failure to allege such claim during the administrative process, the plaintiffs and their counsel merely replead the same count by adding a factual reference to plaintiff Thompson and adding on vague allegations regarding plaintiff Johnson Reynolds that bore no obvious connection to the conduct raised in the administrative process. *See* Amend. Compl. ¶¶ 93–98. Plaintiff Thompson and his counsel were warned by the defendant, both in a status conference before this Court and through multiple letters, that their conduct was sanctionable, and yet continued on with this lawsuit. Def. Mot. for Sanctions, Ex. I–K (hearing transcript and letters, dated July 31, 2002 and October 31, 2002, advising plaintiff that defendant would seek sanctions if suit continued). Moreover, at that very status conference in this case, plaintiff's counsel represented to this Court, on the record, that the claims they wished to add to this suit regarding plaintiff Thompson were not frivolous and thus they should be permitted to amend the complaint. Def. Mot. for Sanctions, Ex. I, at 16–17. This abuse of the judicial process constitutes an egregious violation of Rule 11 in the judgment of this Court.

▮ Finally, the conduct of plaintiff Thompson and his counsel is similarly vio-

5. *See* fn. 3 *supra.*

lative of 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The D.C. Circuit has previously upheld sanctions where plaintiff's counsel sought to circumvent a district court ruling by requesting an ex parte order in state court for relief. *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 905 (D.C.Cir.1998). This conduct was "plainly inconsistent with the previous district court order." *Id.; see also John Akridge Co. v. The Travelers Cos.*, 944 F.Supp. 33, 33–34 (D.D.C.1996). This Court finds that under either a "bad faith" or "recklessness" standard, see *LaPrade*, 146 F.3d at 906, the conduct of the plaintiff and his counsel in this case in pursuing vexatious and dilatory litigation warrants sanctions under 28 U.S.C. § 1927. Ignoring both Judge Urbina's ruling in *Thompson I*, which was upheld by our circuit court, and Judge Robertson's ruling regarding the Johnson Reynolds complaint, they have nonetheless persisted in alleging claims without any reasonable factual or legal basis to support this Court's jurisdiction over such claims.

 As the Court has found violations of Rule 11(b)(1) and (3) (as well as violations under 28 U.S.C. § 1927) monetary sanctions are appropriate under subsection Rule 11(c)(2). Additionally, it is well-established that monetary sanctions are also appropriate under 28 U.S.C. § 1927. The district court is given discretion to "tailor Rule 11 sanctions as appropriate to the facts of the case," striking a balance between equity, deterrence, and compensation. *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C.Cir.1990). Thus, a court should impose "the least severe sanction" adequate to effectuate the purpose of Rule 11. *Id.* Courts in this district have recognized that monetary sanctions under Rule 11 may be measured by the cost of defending against the frivolous action. *See, e.g., John Akridge Co. v. Travelers Companies,* 944 F.Supp. 33, 34 (D.D.C.1996) (granting sanctions of the "full cost" of defending the plaintiff's bad faith action, a total of $25,756.58); *Washington Bancorp. v. Said,* 812 F.Supp. 1256, 1275 (D.D.C.1993) (granting sanctions for defendant's attorneys' fees and costs in defending against baseless claims). Rule 11 also provides that the court may order a party to pay a penalty to the court. Fed.R.Civ.P. 11(c)(2); *see also In re Banks,* 1993 WL 184007, at *1 (D.C.Cir., May 20, 1993) (ordering $5,000 penalty to be paid to the Clerk of the Court); *Del Canto v. ITT Sheraton Corp.,* 865 F.Supp. 934, 940 (D.D.C.1994) (ordering $500 penalty to be paid to the registry of the court). The Court finds that, although the defense of this case likely cost substantially more, a penalty of $1000 to be paid by plaintiff Thompson and $1000 to be paid by each of plaintiff's counsel is a sanction sufficient to effectuate the purpose of Rule 11. These amounts should be made payable to the Clerk of the Court, to be used for continuing legal education. It is a small payment, indeed, towards the considerable resources that have been unnecessarily expended since Judge Urbina's initial ruling in *Thompson I*. Hopefully it will deter plaintiff Thompson, the Martins, and others from engaging in similar conduct, which deprives a myriad of legitimate claims of the judicial attention they justly deserve.

### ORDER

For the reasons set forth above, it is this 31st day of March, 2004, hereby

**ORDERED** that the defendant's Motion for Sanctions [# 34] is **GRANTED**; and it is further

**ORDERED** that the plaintiff shall pay $1000 to the Clerk of the Court within thirty days of this order; and it is further

**ORDERED** that attorneys for the plaintiff, Lolita James Martin and LaJuan F. Martin, shall each pay $1000 to the Clerk of the Court within thirty days of this order; and it is further

**ORDERED** that the above-captioned case is dismissed.